HENRY NICOL, Appellant, v. MARY E. YOUNG *et al.*,
Respondents.

### Kansas City Court of Appeals, January 11, 1897.

1. **Contracts:** EVIDENCE: WRITTEN AND PAROL. Parol evidence can
not be received to alter, vary, or contradict a written contract.

2. ———: ———: ———: ILLITERATE PERSON. Where a contract is
read or expounded to an illiterate person so that it differs materially
from the real contract signed, such fraud results that the courts will
inquire into it.

3. ———: ———: ———: CONFIDENTIAL RELATION. Both at law and
in equity one of sound mind must exercise ordinary prudence in the
execution of written instruments and must read the same or have it
read before signing; but in case of agents, attorneys, or other
fiduciaries, the party may sign on their representations and be pro-
tected from their fraud; and where, by the misconduct of the other
party's attorney in misreading a contract, one is deceived and induced
to sign an instrument to which he never assented, he is entitled to
relief.

4. ———: ———: ———: READING. Where one of several signers of a
contract reads the same, he can not be heard to complain of an
attorney's representation that it did not contain certain provisions,
nor will the attorney's representation to co-obligors repeated to him
make his evidence competent.

5. **Landlord and Tenant:** FRAUD: JUSTICE'S JURISDICTION: RENT.
*Held,* that the justice had jurisdiction of the defendant's defense of
fraud in the execution of a lease under which plaintiff is seeking to
recover rent.

6. ———: RENT: EXPIRATION OF LEASE. A tenant is liable for rent
which became due during the life of a lease, although the lease is
thereafter abrogated, canceled, or expires.

*Appeal from the Cooper Circuit Court.*—HON. D. W.
SHACKLEFORD, Judge.

AFFIRMED.

*W. G. Pendleton* for appellant.

(1) The exclusion of the parol evidence of Mary E. Young and Nellie Young offered to prove misrepresentations made by the attorney who drew the contract, as to the legal effect and operation of the instrument, were rightly excluded by the court, upon the first ground of objection made by the plaintiff, viz.: that such evidence can not be received to alter, vary, or contradict the writing. 1 Greenleaf on Evidence [13 Ed.], chap. 15, sec. 275, p. 321; *Koehring v. Muemminghoff*, 61 Mo. 403. Misrepresentations, to be fraudulent, must be of matter of fact and not of law. *Kingman & Co. v. Shawley*, 61 Mo. App. 54; Lawson on Contracts, sec. 235, p. 261. (2) Nellie Young read the contract before she signed it. Certainly the defense of fraudulent misrepresentation of the meaning and legal effect could not prevail in her favor, and the judgment ought to have stood as to her at all events. (3) Mary E. Young testified that the contract was read over to her by the draftsman. Her testimony and the offers of her counsel go to show, not that the writing was not accurately read, but that its effect was explained to her different from its true meaning. "The mere fact that the signature of a party to a writing was procured through misrepresentation of its legal effect will not constitute a defense to an action upon it." *Kingman & Co. v. Shawley, supra; Koehring v. Muemminghoff, supra.*

*J. F. Rutherford* for respondents.

(1) The trial court did not err in sustaining the motion for new trial. The contract was not competent evidence in this case. It is plain upon its face that the contract offered is a contract to convey real estate upon

the performance, by defendants, of certain conditions therein mentioned. A deed was duly executed and placed in escrow to be delivered upon the performance of the conditions above mentioned. This contract can not be changed into one for the leasing of the premises by merely calling the periodical payments "rent." Tiedeman on Sales, secs. 9 and 203; *Hervey v. Locomotive Works*, 93 U. S. Rep. 664. (2) This being a contract to convey land, the relation of landlord and tenant between vendor and vendees did not exist. No action for rent would lie until the abandonment of the contract. Therefore the contract offered is not competent evidence in support of the action for rent in this case. *Coffman v. Huck*, 19 Mo. bottom page 440; *Kirkpatrick v. Downing*, 58 Mo. 36, 37; *Bank v. Aull*, 80 Mo. 199. (3) The parties had rescinded or abandoned the contract. A rescission or abandonment of a contract may be proved by parol. It may be inferred from the acts of the parties. *Fine v. Rogers*, 15 Mo. 316; *Chouteau v. Iron Works*, 94 Mo. 388; *Coffman v. Huck*, 19 Mo. 440; *Kirkpatrick v. Downing, supra;* Sedgwick on Damages, sec. 754. When defendants abandoned their contract and the premises, Nicol had his election to either rescind the contract and take possession (which he did as shown by the evidence), or sue for the breach thereof. He could not do both. Bishop on Contracts, sec. 827. (4) Defendants alleged as a defense that they were induced to sign the contract by fraud and misrepresentation as to its contents. Mrs. Young relied on the attorney acting for Nicol and in Nicol's presence, to read the contract for her before signing. She contends that the contract was read as containing something which she afterward learned it did not contain. Such evidence is relevant on the question of fraud and should be admitted.

*Rothschild v. Frensdorf*, 21 Mo. App. 318–323; Lawson
on Contracts, secs. 228, 235, and 237. These false
representations, if communicated by Mrs. Young to
her daughter who acted upon them, constitute a valid
defense in her behalf. Lawson on Contracts, secs. 235,
236, 341; 8 Am. & Eng. Ency. of Law, pp. 644, 645.
(5) Appellant's objection that the justice of the peace
had no jurisdiction of the defense of fraud and mis-
representation, is not supported by the authorities.
Fraud is a good defense in an action at law. 2 Parsons
on Contracts, 280, and notes; *Montgomery v. Tipton*,
1 Mo. 446; *Pemberton v. Staples*, 6 Mo. 39; *Smalley v.
Hale*, 37 Mo. 103; *Edgell v. Sigerson*, 20 Mo. 495;
*Optical Co. v. Richards*, 62 Mo. App. 408; *Lithograph
Co. v. Obert*, 51 Mo. App. 240.

SMITH, P. J.—This is an action that was brought
before a justice of the peace to recover a month's rent.
In the circuit court, to where the cause was removed
by appeal, there was a trial before a jury, where the
plaintiff had a verdict. The defendants filed a motion
to set the same aside, which was sustained, and from
that order the plaintiff has appealed.

The plaintiff gave in evidence a certain contract
respecting the lease and sale of certain real property
which was signed by both plaintiff and de-
FACTS.         fendants. The defendant, Mary E. Young,
was called as a witness in behalf of the defendants and
testified that she did not read the contract before she
signed it, but that it was read over to her by Mr. Pen-
dleton who wrote it. She was asked whether Mr.
Pendleton attempted to explain to her the contents of
the contract, and answered that he did. She was then
asked what, if anything, was said about the time she
was to move from the premises. To this question
counsel for plaintiff objected, for the reason that the

evidence sought was in violation of the rule that a written contract can not be contradicted, altered, or explained by parol. Counsel for defendant stated that they "proposed to show that it was explained to Mrs. Young at the time she signed the contract as being contained therein, that if she moved into those premises .a certain length of time, she would have thirty days in which to get out without paying any further rent." The court said: "You mean something was read that was not in the contract?" Counsel for defendants replied: "It was explained to her, something that was not in the contract at that time; for instance, she could stay in three months and pay three months' rent." The court thereupon rejected the defendants' offer and sustained plaintiff's objection. This ruling of the court is assigned for error.

It appears from the testimony of the plaintiff that she and defendant Mary E. Young requested a Mr. Whitlow to write the contract, but he was unable to do so; but Mr. Pendleton, a lawyer who was present, stated that he could write it; that plaintiff and defendants both agreed that Mr. Pendleton should write the contract, which he accordingly did. Now, assuming, as we must, that defendants could make good their offers of proof, should the same have been admitted? It seems to be the defendants' contention that the contract was misread and misexpounded to them by Mr. Pendleton. It does not appear that the defendants were illiterate persons. The

CONTRACTS: evidence: written and parol.

rule is elementary that parol evidence can not be received to alter, vary, or contradict a written contract. Greenl. on Evid., sec. 321; *Koehning v. Muemminghoff*, 61 Mo. 403. This rule, however, is not of universal application, as we shall presently see.

Where one of the parties to a contract is an illiterate person and the other misreads or misexpounds it, so that the former is induced thereby to sign it, believing that it is that which was read and *—: —: illiterate* expounded to him by the latter, when it *person.* differs materially therefrom, this is such a fraud upon the part of the latter as would render the contract void for the plain reason that the former never assented to it. *Lithograph Co. v. Obert*, 54 Mo. App. 240; *Van Valkenburg v. Rouk*, 12 Johns. 337. Courts will not turn a deaf ear to one of the contracting parties who seeks to get rid of a contract when the other party is charged with fraud in reading the contract to him, or in stating its nature, or terms, or in leaving out terms agreed upon. *Hutchins v. Pettingill*, 58 N. H. 30; or in inserting those not agreed upon: *Aultoman v. Olson*, 34 Minn. 450. And this is true where the complaining party can not read, or if so, with difficulty. Bigelow on Fraud, 525, 526, and cases there cited. Common prudence requires that a person who can read should read an instrument before he signs it, and if he does not exercise such prudence and is deceived, there is no legal fraud, but if he does exercise such prudence and is deceived, then there is such fraud as the law will relieve. *Robinson v. Glass*, 94 Ind. 208; *Hawkins v. Hawkins*, 50 Col. 558.

And the rule is, both at law and in equity, that one of sound mind must exercise ordinary prudence in conducting negotiations and executing in- *—: —: confiden-* struments. 2 Pomeroy, Eq., sec. 893; 1 *tial relations.* Story, Eq., sec. 200a; 2 Kent, Com., sec. 485; 94 Ind. *supra*, and cases there cited. And while it is true that where one signs an instrument, he must read it if he can read, or have it read, if he can not, yet this rule does not operate when a trick or artifice is resorted to for the purpose of preventing him from

reading or having read to him the instrument. If a known trust and confidence is reposed in the person making the representation and there is a relationship justifying such trust and confidence, then the person to whom the representations are made may rely upon them. So one who occupies the relation of agent, or any like relation, is required in all negotiations and contracts to state all matters within his knowledge fully and truly and to make no statements that are not true in every material particular. 1 Whart. Contr., sec. 254. So the principal may rely on the statement of his agent or confidential adviser, as to the contents of any written instrument presented to him for signature by a third person. So one is guilty of fraud who knowingly procures an agent or confidential adviser to falsely represent the contents of a writing and thus prevents it from being read. *Robinson v. Glass, supra; Lennington v. Strong*, 111 Ill. 152.

Recurring further to the question of whether or not, where one of the contracting parties can read and does not read a contract before signing, but relies for his knowledge of its contents and nature upon the reading of the other party and in consequence thereof he is deceived, such party can have any relief, we may quote the pertinent language used by the New York court of appeals in *Savings Inst. v. Benedict*, 87 N. Y. 40, which is to the effect: "It is certainly not just that one who has perpetrated a fraud should be permitted to say to the party defrauded, when he demands relief, that he ought not to have believed or trusted him. Where one sues another for negligence, his own negligence contributing to the injury will constitute a defense to the action; but where one sues another for a positive, willful wrong, or fraud, negligence, by which the party injured exposed himself to the wrong or fraud, will not bar relief. If the rule were otherwise,

the unwary and confiding who need protection of the law the most would be left a prey to the fraudulent and artful practice of evil doers.'' This case, with the other New York cases to which it refers, is not in harmony with those previously hereinbefore cited by us, in respect to the question whether a contracting party who can read and fails to read the contract which he signs and in consequence thereof is deceived and induced to sign it by the misreading or misexpounding of it by the other party, is thereby guilty of such imprudence as will avoid the contract. While this divergence may be noted, it is really unimportant, since the defendants had a right, as we think, to rely on the reading and expounding of the contract by Mr. Pendleton, who was their attorney, and therefore they were not negligent in not themselves reading the contract before signing.

It seems quite clear to us that the proof which the defendants offered was competent to show that the contract offered in evidence was materially different from that read and expounded by Mr. Pendleton, and that, by reason of such misreading and misexpounding, the defendants had been deceived and induced to sign a contract to which they had never assented, and that therefore the case is one of fraudulent representation and falling within the principles to which we have already fully adverted.

It appears that the defendant, Nelly Bly Young, read the contract before signing it, and that being so, she can not now be heard to say that Mr. Pendleton represented to her that it contained certain provisions not therein found and that she believed such representations to be true. Nor does the fact that the alleged represensions made by Mr. Pendleton to her codefendant were repeated to

her, add anything to the competency and relevancy of her testimony.

It is further contended that the contract is one affecting real estate and that therefore the justice had no jurisdiction of the defense of fraud and misrepresentation. It is too lengthy to be set forth here. It amounted to no more than if the plaintiff had made a proposition in writing to the defendants to about this effect: "If you (meaning defendants) will rent my house at twenty-five dollars per month payable in advance, until the amount of the rent shall equal twenty-two hundred dollars, then I will convey the title to you in fee without the payment of any further sum." And that the defendants had, in like manner, replied: "We accept your proposition." That thereupon the defendants went into possession of the property and continued to pay the rent until the expiration of the third month, when they declined to pay further rent, but continued in the possession for one month more, when they abandoned the possession. It is conceded that upon the abandonment of the property the contract was rescinded.

*LANDLORD and tenant; fraud; justice's jurisdiction; rent.*

The rent sought to be recovered is that remaining unpaid for the last month of defendant's occupancy. It is difficult to see how, if the contract was as it is written, the defendants can, upon any just principle, expect to escape the payment of this rent. When the rent fell due under the contract it was in full force, and as to defendants' obligation to pay the same, it is still binding. It can hardly be contended that the obligation of a tenant to pay monthly rent under an agreement is discharged as to the rent due and unpaid at the time the agreement expires by its own limitation, or where it is for-

*——; rent; expiration of lease.*

feited, or rescinded, or where the tenancy is for any cause terminated.

We think the contract was properly received in evidence, not only to show the defendants' liability to pay rent, but to show the amount of the monthly rent which they had agreed to pay.

No reason is perceived why the justice did not have jurisdiction of the defense which the defendants sought to interpose. If the defendants can adduce such impeaching evidence as will bring their defense within the principles which we have endeavored to state, we see no reason why they may not be permitted to do so.

It follows that the order of the court setting aside the verdict will be affirmed.    All concur.